# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LEON JUNIOR HARRIS,

        Petitioner,

                      CIVIL NO. 4:14-CV-11604

v.                        HONORABLE LINDA V. PARKER
                        UNITED STATES DISTRICT COURT

CATHERINE BAUMAN,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND *LEAVE TO APPEAL IN FORMA PAUPERIS*

Leon Harris ("Petitioner"), confined at the Oaks Correctional Facility in Manistee, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, Petitioner challenges his conviction for assault with intent to commit murder, M.C.L.A. 750.83; and felony firearm, M.C.L.A. 750.227b. For the reasons stated below, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

## I. Background

Petitioner was charged with first-degree murder, assault with intent to commit murder, and felony-firearm. Following a jury trial in the Wayne County Circuit

1

Court, Petitioner was acquitted of the first-degree murder charge, but convicted of the remaining charges.

Louis Hence testified that on April 7, 2007, he went with his cousin Rico Hence to a house at 9300 Forrer in Detroit, Michigan. (Tr. 122 June 23, 2009.)  Louis and Rico entered and saw Jermaine Johnson, a friend from the neighborhood. (*Id.* at 122-24.) Rico informed Johnson that he was there to see Petitioner. (*Id.* at 125.) When Petitioner arrived at the house, Rico told Louis to go to the back of the house, but Louis left the room and stood around the corner. (*Id.* at 127-28.)

Louis Hence could hear Petitioner speaking with Rico, but he could not hear the precise nature of the conversation. (*Id.* at 130.)  Rico sounded aggressive, as though he was taunting Petitioner. (*Id.*) Petitioner and Rico began fighting with one another. (*Id.* at 130-31.)  Louis Hence testified that Johnson ran out the front door. (*Id.* at 133.) Louis ran out behind him. (*Id.*) Louis Hence testified that he did not have a gun, and to his knowledge, Rico did not have one either. (*Id.* at 160-61, 166).  While running away from the house, Louis Hence heard multiple gunshots fired from inside the house. (*Id.* at 134.)  As Louis continued running, he heard more gunshots. (*Id.* at 135.) One of the gunshots struck Louis in the back. (*Id.* at 136.)  Louis turned around and observed a person wearing dark clothes jump off the porch and run away from the house. (*Id.* at 137.) Louis kept running, but noticed that he was bleeding heavily, so

2

he stopped at a house and called his girlfriend to come pick him up and take him to the hospital. (*Id.* at 138.)

The following morning, police were called to an abandoned Saturn SUV blocking an alley in the area of West Bethune and 12th Street, which is approximately 8-10 miles from 9300 Forrer Street. (*Id.* at 190-91.)  The police discovered Rico Hence's body, covered with a black coat, in the rear cargo area of the vehicle. (*Id.*) One of Rico's shoes was missing and his pants were pulled down below his waist. (*Id.* at 225, 227-28).

Police searched 9300 Forrer and recovered four 40 caliber shell casings and bullet fragments in the living room. (*Id.* at 208-09.) Near the side door of the house, the police found a white Nike gym shoe and a black sweatshirt jacket with two bullet holes and a substantial amount of blood. (*Id.* at 210-11.)  Police noticed a pool of blood in the living room and a blood trail that went from the kitchen, down the stairs to the side door, along the side of the house, and to a tree in the backyard. (*Id.* at 212-14.)  Police saw tire tracks near a tree, which suggested that an injured person had been taken away from the location in a car. (*Id.* at 213.) Police also discovered two additional spent 40 caliber Smith and Wesson casings directly across from the house, about 130 feet southwest of the front of the house, and a fired bullet that had struck a vehicle parked 137 feet southwest of the house. (*Id.* at 233-37.) The Michigan State

3

Police determined that the four casings found in the house and the two casings found on the street were all discharged from the same firearm. (*Id.,* pp. 243-48.)

Jermaine Johnson testified for the defense. Johnson indicated that he, Rico, and Petitioner were all friends. (Tr. 26 June 24, 2008.) Rico had been at the house on Forrer Street earlier on the day of the shooting, and the men made plans to go to a bar later that night. (*Id.* at 28.)When Rico returned to the house with his cousin Louis around 9:30 p.m., Johnson complained that he had taken too long and that he wanted to eat. (*Id.* at 29.) Johnson testified that Rico pulled out a gun, pointed it at Johnson's stomach, and said "eat on this." (*Id.*) Rico then asked Louis to come inside the house. (*Id.* at 31-33.) Rico closed the door, patted Johnson down, before taking his money and cell phone. (*Id.* at 33-35.) Johnson testified that Louis Hence was also armed with a gun and stood behind Rico during the robbery. (*Id.* at 35. ) Rico struck Johnson in the face with the gun, and also stated that he had asked Petitioner for some money at the casino, but that Petitioner would not give it to him, and that consequently, he was going to take everything from Johnson that night, including his life. (*Id.* at 35-38.)

Petitioner arrived shortly thereafter to the house. Rico ordered told Louis to go behind a wall. (*Id.* at 42.) When Petitioner came inside, Rico pointed the gun at Harris and ordered him to put his hands up. (*Id.* at 43.) Rico then ordered Petitioner to call his girlfriend to tell her to bring over all of the money Petitioner had. (*Id.* at 45.)

When Rico started to fumble around with some money that had been given to him, Petitioner grabbed Rico's gun and the two men began struggling over it. (*Id.* at 46.) As Rico began calling for Louis, Johnson ran out the front door. (*Id.* at 47.) Johnson testified that Louis ran out from behind the wall and chased him out the door. (*Id.* at 48.) Johnson heard three shots fired from inside the house and then two more outside, which he testified came from Louis shooting at him. (*Id.* at 48-49.) Johnson ran to Debra Ann Miller-Jones' house and banged hysterically at the door. (*Id.* At 50-51.) Johnson informed her that Petitioner was dead and that "they tried to stick him up." (*Id*. at 77-80.)

Petitioner's conviction was affirmed on *appeal. People v. Harris,* No. 287169 (Mich. Ct. App. Jan. 4, 2011); *lv. den.* 489 Mich. 900; 796 N.W. 2d 92 (2011).

Petitioner filed a post-conviction motion for relief from judgment, which the trial court denied. *People v. Harris*, No. 08-002516-01 (Wayne County Circuit Court, May 16, 2012). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Harris*, No. 311500 (Mich. Ct. App. June 14, 2013); *lv. den.* 495 Mich. 939; 843 N.W.2d 212 (2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. There was insufficient evidence at trial to convict petitioner of assault with intent to commit murder and/or of using a firearm during the commission of a felony where there was ample support for his argument

that he was acting in self-defense/defense of others.

II.  The jury instruction regarding petitioner's alleged "flight" from the scene was erroneous as a matter of law and fact, warranting reversal.

III.  The United States and Michigan Constitutions guarantee a criminal petitioner's right to the effective assistance of counsel. Petitioner's defense counsel was constitutionally deficient, given that: (A) Counsel failed to investigate the physical evidence that the Detroit Police Department lost or mishandled; (B) Counsel failed to provide evidence that would have convinced the jury that petitioner acted in defense of others; and (C) Counsel's failure to move to dismiss or to request an appropriate instruction based on the loss of the potentially exculpatory evidence denied petitioner a fair trial.

IV.  Appellate counsel was ineffective or error is plain for not arguing the following: (A) Prosecution failed to inform petitioner of the information attained by police that there was possible video evidence and an interview of Derrick Robinson which would have shown that the victim had a weapon and was firing it at petitioner's friend.  The failure to provide this evidence violated *Brady v. Maryland,* 373 U.S. 83 (1963). Alternatively, the petitioner is entitled to a new trial based on newly discovered evidence that supports the defense theory that petitioner was acting in defense of others. (B) Petitioner was deprived of his constitutional right to the effective assistance of counsel when his attorney failed to offer evidence that trial counsel was negligent in his efforts to represent petitioner.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

An application for a writ of habeas corpus on behalf of a person in

6

custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In order to obtain habeas relief

7

in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

### III.  Discussion

### A. Claim # 1.  The sufficiency of evidence claim.

Petitioner initially contends that there was insufficient evidence to convict him of assault with intent to murder or felony-firearm because the prosecutor failed to present sufficient evidence to disprove Petitioner's claim that he acted in self-defense and in defense of others.

"Under Michigan law, one acts lawfully in self-defense if he or she honestly and reasonably believes that he or she is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act." *Stokes v. Haas*, No. 2:07-CV-11341, 2014 WL 3361827, at *7 (E.D. Mich. July 9, 2014) *(*quoting *Blanton v. Elo*, 186 F. 3d 712, 713, fn. 1 (6th Cir. 1999) (citing to *People v. Heflin*, 434 Mich. 482; 456 N. W. 2d 10 (1990)).   To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he or she was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared

8

at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002) (citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W. 2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322; 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985)).  Under Michigan law, a defendant is not entitled to use any more force than is necessary to defend himself or herself. *Johnigan,* 207 F. Supp. 2d at 609 (citing *Kemp*, 202 Mich. App. at 322).  "[T]he law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Johnigan,* 207 F. Supp. 2d at 609 (internal citation omitted).  In Michigan, the right to act in self-defense also includes the right to defend another person. *Id.* (citing *People v. Curtis*, 52 Mich. 616, 622; 18 N.W. 385 (1884); *People v. Wright*, 25 Mich.App. 499, 503; 181 N.W.2d 649 (1970)).

Petitioner's claim is non-cognizable on habeas review.  Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree,* 486 Mich. 693, 704, 712; 788 N.W. 2d 399 (2010).  The defense of another person is also considered an affirmative defense under Michigan law. *See e.g. People v. Singh,* No. 2013 WL 6124224, * 3 (Mich.Ct. App. November 21, 2013).  "An affirmative defense, like

self-defense, 'admits the crime but seeks to excuse or justify its commission.  It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich. 127, 155, n. 76; 815 N.W.2d 85 (2012) (quoting *Dupree,* 486 Mich. at 704, n. 11).  Although under Michigan law the prosecutor is required to disprove a claim of self-defense or defense of others, *see People v. Watts*, 61 Mich. App. 309, 311, 232 N.W.2d 396 (1975), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required...." *See Smith v. United States,*133 S. Ct. 714, 719 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)).  The Supreme Court and the Court of Appeals for the Sixth Circuit have rejected the argument that the Constitution requires the prosecution to disprove self-defense beyond a reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Blackmun, J., dissenting) ("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"); *Martin v. Ohio*, 480 U.S. 228, 233-36 (1987); *see also Allen v. Redman*, 858 F. 2d 1194, 1197 (6th Cir.1988) (explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F. 2d 50 (6th Cir. 1986)).  Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative

defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell,* 181 F. 3d 731, 740 (6th Cir. 1999); *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997) .

Petitioner does not challenge the sufficiency of the evidence in support of the essential state law elements of assault with intent to commit murder and felony-firearm; rather, "he has only faulted the jury's refusal to credit his proffered affirmative excuse or justification" for the shooting of Louis Hence. *Caldwell,* 181 F. 3d at 740. As such, Petitioner's claim that the prosecutor failed to disprove his affirmative defense is non-cognizable on habeas review. *Id.; Allen v. Redman,* 858 F. 2d at 1200.

Moreover, even if Petitioner's claim was cognizable, Petitioner would not be entitled to relief.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S.

11

307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.*  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Therefore, for a federal habeas court reviewing the sufficiency of evidence for a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or

redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Under Michigan law, the elements of assault with intent to commit murder in Michigan are: (1) an assault; (2) with an actual intent to kill; (3) which if successful, would make the killing murder. *See Warren v. Smith,* 161 F. 3d 358, 361 (6th Cir. 1998); *See also Steele v. Withrow,* 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001).

The elements of felony-firearm are that the defendant possessed a firearm while committing, or while attempting to commit, a felony offense. *See Parker v. Renico,* 506 F. 3d 444, 448 (6th Cir. 2007).

Petitioner claims that the evidence was insufficient to convict him of the assault upon Louis Hence because the prosecutor failed to disprove his theory that he shot Louis Hence to prevent him from shooting his friend Jermaine Johnson. The Michigan Court of Appeals rejected Petitioner's argument:

> Defendant asserted a defense of others theory at trial, claiming that he shot Louis to prevent Louis from harming or killing another man. Viewing the evidence in a light most favorable to the prosecution, the

13

jury was free to reject defendant's claim of defense of others.  Louis denied possessing a gun as he fled the house.  Although the other man claimed Louis had fired shots at him, the only shell casings found in or around the house came from the handgun that must have been in defendant's possession.  The fact that the jury found the proofs insufficient to establish beyond a reasonable doubt that defendant killed Rico, or that he had acted in self-defense in doing so, did not render inconsistent the jury's verdict that defendant committed assault with intent to murder as it pertained to Louis.  A rational trier of fact could reasonably infer from the circumstantial evidence that the other man was not facing imminent danger of death or the threat of great bodily harm from Louis.

*Harris,* No. 287169, Slip. Op. at * 2-3.

The Michigan Court of Appeals rejected Petitioner's claim, on the ground that Louis Hence denied having a gun in his possession and the shell casings recovered from the crime scene suggested that they were all fired from the handgun in Petitioner's possession.  A federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos,* 132 S. Ct. at 6 (quoting *Jackson v. Virginia,* 443 U.S. at 326).  Although Jermaine Johnson testified that Louis Hence chased after him with a gun and fired it at him, Louis Hence denied having a gun in his possession and the shell casings recovered from the scene suggest that they had all been fired from

14

petitioner's handgun.  Although there was some inconsistent testimony concerning whether Louis Hence was armed with a handgun and discharged it at Johnson, this Court must presume that the jurors resolved such conflicting evidence in favor of the prosecution and determined that Louis Hence was unarmed and that Petitioner had no justification for shooting at him.

Although there may have been some evidence to support Petitioner's defense of others claim and Petitioner has given interpretations to the evidence that differ from the state court's interpretation of the evidence, "in light of the deference to be accorded to state-court factfinding under § 2254(e), as well as the traditional deference accorded to the jury's resolution of disputed factual issues," Petitioner is unable to show that the Michigan Court of Appeals' unreasonably determined that the prosecutor disproved Petitioner's self-defense/defense of others claim. *See Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).  Because the jury essentially chose to reject Jermaine Johnson's testimony that Louis Hence was armed with a firearm, which is a credibility determination that this Court must defer to, Petitioner is not entitled to habeas relief on his sufficiency of evidence claim. *See e.g. Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 597-98 (E.D. Mich. 2001).  Petitioner is not entitled to relief on his first claim.

**B. Claim # 2.  The jury instruction claim.**

Petitioner next contends that the trial judge erred in instructing the jurors that they could consider his flight as evidence of guilt, when there was no evidence that he fled the crime scene to avoid prosecution. The judge gave the jurors the following instruction:

> There's been some evidence that the defendant fled after the crime was committed. That evidence by itself is not - - does not prove guilt, because the prosecutor has to prove the elements as I have indicated to you. A person may ride - - may run or hide for innocent reason such as panic, mistake or fear, or they may run because they have a consciousness of guilt. You must decide whether the evidence of that flight is true, and if so whether it shows the defendant had a guilty state of mind, or it was panic, mistake, or fear. You have to decide the facts, what they are, and you have to determine which witnesses you believe and how important you think their testimony is. You don't have to accept or reject in total what a witness says, because you can believe all, part, or none of that testimony.

(Tr. 159-60 June 23, 2008.)

The Michigan Court of Appeals rejected petitioner's claim:

> In this case, there was evidence to support the trial court's "flight" instruction. Louis testified that, immediately after he was shot, he turned and saw a man wearing dark clothing, presumably defendant based on the circumstantial evidence in the case, jumping off the back porch of the home and running away. That evidence also showed that Rico's body had been dragged from the home and removed from the property. His body was later discovered inside a car located 8 to 10 miles from the house. That defendant hurriedly left the scene, coupled with the inference that defendant (or someone acting on behalf of defendant) removed Rico's body from the scene and transported it to a different location, demonstrates a consciousness of guilt. That defendant voluntarily turned himself in to police several days later does

16

not negate this inference.  Defendant may have initially fled the scene, then had second thoughts about the implications of his actions and turned himself in to police.  Because the evidence supported the "flight" instruction, the jury's verdict should not be reversed on the basis of instructional error.

*Harris,* No. 287169, Slip. Op. at 3 (internal citations omitted).

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.

To the extent that Petitioner contends that there was insufficient evidence

17

presented to support a flight instruction, he would not be entitled to relief.  Federal

courts are bound by the state courts' interpretation of their own laws. *See Mullaney*

*v. Wilbur*, 421 U.S. 684, 690-91 (1975).  The nature of a particular jury instruction

that is given is a matter of state law, and a federal court is not at liberty to grant a writ

of habeas corpus simply because the federal court finds the state court's decision was

incorrect under state law. *Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003).

Because the Michigan Court of Appeals ruled that Petitioner's actions were sufficient

to support a flight instruction under Michigan law, this Court must defer to that

determination and cannot question it. *See Seymour*, 224 F. 3d at 558.

Under Michigan law, flight is relevant to prove a defendant's consciousness

of guilt. *Johnson v. Burke*, 903 F. 2d 1056, 1062 (6th Cir. 1990) (internal citations

omitted).  Thus, the giving of a flight instruction did not violate Petitioner's due

process rights or render the trial fundamentally unfair, particularly in light of the fact

that the flight instruction directed jurors to make their own determinations as to

whether Petitioner did, in fact, attempt to flee the scene and if so, what state of mind

such flight evinced. *See Burton v. Renico*, 391 F. 3d 764, 778 (6th Cir. 2004); *See also*

*U.S. v. Carter*, 236 F. 3d 777, 792, n. 11 (6th Cir. 2001) (not an abuse of discretion

for the district court to give a flight instruction, though defendant may have had a

reason to flee from officers other than guilt of the criminal charge, where the

18

instruction stated that evidence of flight may or may not indicate a defendant's guilty conscience or intent to avoid punishment).

Petitioner further complains that the flight instruction was unfair because the judge stated that Petitioner fled "after the crime was committed," which Petitioner claims undermined his defense and suggested to the jurors that Petitioner was guilty of the charges.  The Michigan Court of Appeals rejected Petitioner's claim:

> Contrary to what defendant claims, that statement did not necessarily suggest his guilt of the crime.  In any event, the statement was technically correct because self-defense or defense of others does not transform the act itself into something less than a crime.  In other words, the killing is still a crime; the law simply recognizes in the situation of self-defense or the defense of others that the killing may be justified or excused.

*Harris,* No. 287169, Slip. Op. at 3.

The general rule in a criminal case is that a trial court may not direct a verdict of guilty. *Krzeminski v. Perini,* 614 F. 2d 121, 124 (6th Cir. 1980*); Schwachter v. United States*, 237 F. 2d 640, 644 (6th Cir. 1956).  However, when a fact is not made an issue by a defendant in a criminal trial and it is shown without controversy by the evidence, a trial judge does not commit reversible error in stating that fact to the jury. *See Malone v. United States*, 238 F. 2d 851, 852 (6th Cir. 1956).

Numerous cases have held that a trial judge does not invade the province of the jury, direct a verdict of guilty, or otherwise commit reversible error by stating that

19

certain facts are uncontested or uncontroverted, when they have been conceded to by the defendant and are not disputed at trial. *Krzeminski,* 614 F. 2d at 125 (error in instructing jury that verdict of not guilty could not be returned, since defendant had admitted in open court that he killed victim, was harmless beyond a reasonable doubt where defense never argued that defendant should be found not guilty but, rather, argued that defendant should be found not guilty by reason of insanity or guilty of a lesser included offense); *Malone,* 238 F. 2d at 852 (charge to jury that certain essential elements of offense of aggravated bank robbery had been shown to exist was not reversible error, where such elements were not made an issue by defendant and the elements had been shown without controversy by the evidence); *United States v. Bard,* 408 F. 2d 347, 348 (6th Cir. 1969) (where defense counsel in opening statement stated that there was no question but that bank robbery occurred, and evidence was uncontroverted that robbery had been committed by use of a hand gun, district court was justified in charging that sole issue was the identity of a person who perpetrated the crime); *Smith v. Anderson,* 505 F. Supp. 642, 644 (E.D. Mich. 1980) (where no one at state trial controverted fact that armed robbery occurred and petitioner's sole defense was that he did not participate, trial court's instruction that armed robbery took place did not offer any basis for federal habeas corpus relief).

In the present case, Petitioner never disputed that he had shot either Rico or

Louis Hence.  Instead, Petitioner argued that his acts were justified because he was acting in self-defense or in defense of his friend Johnson.  The fact that the jury acquitted Petitioner of the first-degree murder charge involving Rico Hence based on Petitioner's claim that he shot Rico in self-defense shows that the judge's remarks that "a crime had been committed" did not compel the jurors to outright reject Petitioner's self-defense or defense of others claim.  Thus, Petitioner is not entitled to relief on his second claim.

### C.  Claims # 3 and # 4.  Petitioner's remaining claims are procedurally defaulted.

Respondent contends that Petitioner's remaining claims are procedurally defaulted for various reasons.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless Petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If a Petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted

in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

Respondent first contends that Petitioner's first ineffective assistance of trial counsel claim involving trial counsel's failure to investigate physical evidence that the Detroit Police Department lost or mishandled, specific bullet evidence and a possible videotape from Derrick Robinson's surveillance system, is procedurally defaulted because Petitioner failed to properly exhaust this claim with the state courts and no longer has an available remedy with which to do so.

Petitioner did not raise this claim on his direct appeal.  In his *pro per* motion for relief from judgment that he filed with the Wayne County Circuit Court, Petitioner raised several ineffective assistance of trial and appellate counsel claims but did not raise this particular ineffective assistance of trial counsel claim. [1]

---

[1]  *See* Brief in Support of Motion for Relief From Judgment. (ECF No. 6-10.)

Petitioner only raised this particular ineffective assistance of counsel claim for the first time in his post-conviction appeal before the Michigan Court of Appeals.

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his or her available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U. S. 270, 275-78 (1971). A petition for a writ of habeas corpus filed by a state prisoner shall not be granted unless the petitioner has exhausted his or her available state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the petitioner's rights. *See Turner v. Bagley,* 401 F. 3d 718, 724 (6th Cir. 2005).

In order to properly exhaust a claim on state post-conviction review, a habeas petitioner is required to present that claim in his or her post-conviction motion before the state trial court and in his or her post-conviction appeal to the state's appellate courts. *See Smith v. Gaetz,* 565 F.3d 346, 352 (7th Cir. 2009).

A number of cases have suggested that a habeas petitioner's failure to present an issue before a state trial court in a motion for post-conviction relief precludes a finding that the issue has been exhausted for purposes of habeas review, even if that issue is later presented on appeal to the state's appellate courts from the denial of the post-conviction motion. *See Lindquist v. Gardner*, 770 F. 2d 876, 878 (9th Cir. 1985)

23

(Idaho prisoner did not exhaust his state remedies by presenting his claim to the Idaho Supreme Court in an original habeas proceeding, where prisoner had a post-conviction remedy under the Uniform Post-Conviction Procedure Act which he should have pursued in the court in which he was convicted and sentenced); *Drake v. Wyrick*, 640 F. 2d 912, 916 (8th Cir. 1981) (petitioner failed to exhaust claim, where he did not assert claim in his post-conviction motion, raising it for the first time on the appeal of the denial of his post-conviction motion); *See also Lesure v. Atchison,* 891 F. Supp. 2d 920, 925-26 (N.D. Ill. 2012); *Middlebrook v. Carroll,* 470 F. Supp. 2d 411, 420 (D. Del. 2007); *Geraci v. Senkowski*, 23 F. Supp. 2d 246, 265-266 (E.D.N.Y. 1998).

Numerous judges in this district have held that a habeas petitioner's claims were not properly exhausted when they were not presented in the petitioner's post-conviction motion for relief from judgment before the trial court and were raised only for the first time in the application for leave to appeal to the Michigan Court of Appeals. *See Ceasar v. Warren,* No. 06–CV–15294, 2009 WL 1543327, * 4 (E.D. Mich. June 2, 2009)*; West v. Jones*, No. 06–CV–12057, 2008 WL 1902063, *11–12 (E.D. Mich. April 29, 2008); *Dorch v. Smith*, No. 01–CV–71206–DT, 2002 WL 32598987, *19 (E.D. Mich. Sept.11, 2002); *aff'd* 105 Fed. Appx. 650 (6th Cir. 2004); *Kincade v. Stegall,* No. 99–CV–76350–DT; 2001 WL 279751, * 5 (E.D. Mich. Jan.

24

23, 2001).

Petitioner's ineffective assistance of trial counsel claim involving counsel's failure to investigate the physical evidence is unexhausted, because he failed to present it in his motion for relief from judgment with the trial court.  Although Petitioner raised other ineffective assistance of counsel claims in his motion for relief from judgment, Petitioner never raised a specific claim before the trial court that trial counsel had been ineffective for failing to investigate the bullet evidence or the videotape.  For purposes of federal habeas review, exhaustion requires that a claim raised in a habeas petition must be presented to the state courts under the same theory in which it is later presented in federal court. *Williams v. Bagley,* 380 F. 3d 932, 969 (6th Cir. 2004).  A claim may be considered "fairly presented" only if the petitioner asserted both the factual and legal basis for his or her claim in the state courts. *See Hicks v. Straub,* 377 F. 3d 538, 552 (6th Cir. 2004).

A habeas petitioner is required to present to the state courts "the same specific claims of ineffective assistance [of counsel] made out in the habeas petition." *Wyldes v. Hundley,* 69 F. 3d 247, 253 (8th Cir. 1995) (*quoting Tippitt v. Lockhart,* 903 F. 2d 552, 554 (8th Cir. 1990).  Because Petitioner's first ineffective assistance of trial counsel claim is different than the ineffective assistance of counsel claims presented in his post-conviction motion, this claim has not been fairly presented to the state

25

courts. *See Caver v. Straub,* 349 F. 3d 340, 346-47 (6th Cir. 2003)(*citing to Pillette v. Foltz,* 824 F. 2d 494, 497 (6th Cir. 1987)); *See also Brandon v. Stone,* 226 Fed.Appx. 458, 459 (6th Cir. 2007).

Unfortunately, Petitioner no longer has any available state court remedies with which to exhaust this claim. Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan is only permitted to file one post-conviction motion for relief from judgment. *See Gadomski v. Renico,* 258 Fed. Appx. 781, 783 (6th Cir. 2007); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999). Petitioner has no remaining state court remedies with which to exhaust his claim. If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995). A claim of actual innocence will excuse this "cause and prejudice" requirement. *Id.* at 1196, n. 3.

Petitioner has failed to establish cause to excuse his default. While ineffective assistance of appellate counsel might excuse Petitioner's failure to raise this claim on

his direct appeal, it does not excuse Petitioner's own failure to correctly exhaust this claim in his post-conviction motion for relief from judgment. *See Gadomski v. Renico*, 258 Fed. Appx. at 784.

Petitioner appears to argue that the failure to raise this claim should be excused because of the ineffectiveness of post-conviction counsel.

Petitioner will not be excused from his default for two reasons. First, petitioner filed his post-conviction motion for relief from judgment *pro per.* Counsel was only appointed to represent Petitioner for his post-conviction appeal, at which point counsel did successfully move to amend his application for leave to appeal to include this claim. Secondly, Petitioner cannot rely on ineffective assistance of post-conviction counsel as cause because there is no constitutional right to an attorney in post-conviction proceedings. *See Coleman,* 501 U.S. at 752-53, *See also Landrum v. Mitchell,* 625 F. 3d 905, 919 (6th Cir. 2010).

Respondent contends that Petitioner's remaining ineffective assistance of trial counsel claims are procedurally defaulted because Petitioner raised these claims for the first time in his post-conviction motion, and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to

27

a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(I).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  These orders, however, did not refer to subsection (D)(3) nor did they mention Petitioner's

28

failure to raise his claim on his direct appeal as their rationale for rejecting his post-conviction claim. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). This court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. *Id.*

The Wayne County Circuit Court judge rejected Petitioner's claim that counsel was ineffective for failing to call Derrick Robinson because Petitioner failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise the issue on Petitioner's direct appeal. *See People v. Harris,* No. 08-002516-01, Slip. Op. at * 12. Petitioner's underlying *Brady* claim and the related ineffective assistance of trial counsel claim were likewise rejected on the same basis. *Id., * 12-13. Because the trial court judge denied Petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), Petitioner's remaining two ineffective assistance of trial counsel claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard,* 405 F. 3d 459, 477 (6th Cir. 2005). The fact that the trial judge may have also discussed the merits of Petitioner's claims in addition to

29

invoking the provisions of M.C.R. 6.508(D)(3) to reject Petitioner's claims does not alter this analysis. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991). Petitioner's final two ineffective assistance of trial counsel claims are procedurally defaulted.

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default for failing to raise these claims on his appeal of right. [2] Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and

---

[2] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F. 3d at 291; *Hicks v. Straub*, 377 F. 3d 538, 558, n. 17 (6th Cir. 2004). However, for the reasons stated below, Petitioner is not entitled to habeas relief on this claim.

effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754.

The Supreme Court has subsequently noted that:

Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [3] claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v.*

---

[3]  *Strickland v. Washington,* 466 U.S. 668 (1984).

*Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Petitioner was represented on direct appeal by an attorney from the State Appellate Defender's Office.  Appellate counsel filed an eighteen page appellate brief which raised the first two claims that petitioner raises in his current petition. [4]  Petitioner has not shown that appellate counsel's strategy in presenting these two claims and not raising other claims was deficient or unreasonable.  Moreover, for the reasons stated by the Wayne County Circuit Court judge in rejecting petitioner's remainng two ineffective assistance of trial counsel claims and by the Assistant Michigan Attorney General in her answer to the petition for writ of habeas corpus, the ineffective assistance of trial counsel claims that were raised by Petitioner in his post-conviction motion were not "dead bang winners."  Because the ineffective assistance of trial counsel claims were not a "dead bang winner," Petitioner has failed to establish cause for his procedural default of failing to raise his claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000).

Moreover, because the ineffective assistance of trial counsel claims lack merit,

---

[4]  *See* Defendant-Appellant's Brief on Appeal. (ECF No. 6-12.)

this Court must reject any independent ineffective assistance of appellate counsel claim raised by Petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

In the present case, Petitioner has failed to allege any reasons to excuse his various procedural defaults. Because Petitioner has not alleged or demonstrated any cause for his procedural defaults, it is unnecessary to reach the prejudice issue regarding his defaulted claims. *Smith*, 477 U.S. at 533; *See also Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider Petitioner's remaining claims as grounds for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural default rule. *Malcum,* 276 F. Supp. 2d at 677. Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review Petitioner's procedurally defaulted claims on the merits. *Id.*

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also

deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 854 (E.D. Mich. 2010).

34

Reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. Reasonable jurists also would not debate whether the Court's procedural rulings on Petitioner's remaining issues are correct or whether those issues state a valid claim of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court therefore declines to issue a certificate of appealability. The Court will also deny Petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing,

**IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

S/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 9, 2016

35

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, August 9, 2016, by electronic and/or U.S. First Class mail.

S/ Richard Loury
Case Manager